UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TEN G, LLC**  CIVIL ACTION

**VERSUS**  NO. 22-4426

**CERTAIN UNDERWRITERS AT**  SECTION: D(5)
**LLOYD'S LONDON, ET AL.**

**ORDER AND REASONS**

Before the Court is Defendant's Motion to Compel Arbitration and Dismiss Claims or Alternatively Stay Litigation Pending Arbitration, filed by Certain Underwriters at Lloyd's, London severally subscribing to Certificate No. AMR-63312-03, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company (collectively, "Defendants").[1] Ten G, LLC ("Ten G"), opposes the Motion,[2] and Defendants have filed a Reply.[3] The Court also allowed Ten G to filed a Sur-Reply brief.[4]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **GRANTED in part and DENIED in part**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from alleged damage to property owned by Ten G that occurred

---

[1] R. Doc. 10.
[2] R. Doc. 12.
[3] R. Doc. 19.
[4] R. Doc. 21.

when Hurricane Ida made landfall in Louisiana on or about August 29, 2021. Defendants, which include both foreign and domestic insurers, had issued a policy of insurance bearing policy number 840883, to Ten G for its commercial property located in Reserve, Louisiana.[5] That policy was in effect on August 29, 2021.[6] Ten G alleges that it reported the damage by filing a claim and that Defendants sent an adjuster to inspect the property on September 6, 2021.[7] Ten G asserts that Defendants also had an engineer inspect the property on September 21, 2021.[8] According to Ten G, Defendants provided an initial statement of loss on December 4, 2021, indicating that it would cost $2,666,164.37 to repair the property.[9] Ten G alleges that it submitted a demand for payment on February 2, 2022 and submitted an estimate from Strategic Claim Consultants, valuing the damage sustained in the amount of $3,749,864.53.[10] Ten G claims that Defendants issued a check on February 11, 2022 in the amount of $1,775,864.53 for the property damage, which was the first payment issued by Defendants. Ten G points out that this was done "158 days following the initial inspection of the Property by Defendants' chosen adjuster."[11]

On or about September 21, 2022, Ten G filed a Petition for Damages against Defendants in the 40th Judicial District Court for the Parish of St. John the Baptist, Louisiana, asserting that Defendants failed to adequately adjust, investigate, and timely pay its insurance claim by severely undervaluing the damages sustained by a

---

[5] R. Doc. 10-1 at p. 2; R. Doc. 12 at p. 2.
[6] R. Doc. 10-1 at p. 2; R. Doc. 12 at p. 2.
[7] R. Doc. 1-1 at ¶ 9.
[8] *Id.*
[9] *Id.* at ¶ 10.
[10] *Id.* at ¶ 11.
[11] *Id.* at ¶ 12.

covered event.[12] Ten G alleges that Defendants' actions in adjusting its claim and failing to timely compensate Ten G for the covered losses sustained to the property were arbitrary, capricious, and/or without probable cause under La. R.S. 22:1892 and La. R.S. 22:1973.[13] As such, Ten G seeks damages, including bad faith penalties under §§ 1892 and 1973, attorney's fees and costs, and "[a]ny and all other relief that the Court deems just and proper."[14]

Defendants removed the matter to this Court on November 7, 2022 pursuant to 28 U.S.C. §§ 1441 and 1446 on the grounds that there is a valid arbitration agreement in the insurance policy in dispute that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereafter, "the Convention").[15] Defendants contend that the Court has original jurisdiction over this case based upon 9 U.S.C. §§ 202, 203, and 205.[16] Defendants assert that the insurance policy contains an arbitration clause that states, "All matters in difference between the Insured and the Companies (hereinafter referred to as 'the parties') in relation to this insurance, including its formation and validity, and whether arising during or after the period of insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out."[17] The arbitration clause also specifies that, "The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature."[18] Defendants assert in the Notice of Removal

---

[12] *Id.* at ¶ 13.
[13] *Id.* at ¶¶ 14-15.
[14] *Id.* at ¶¶ 15-17.
[15] R. Doc. 1 at ¶ I (*citing* 9 U.S.C. § 201, *et seq.*).
[16] R. Doc. 1 at ¶ I.
[17] *Id.* at ¶ III (*quoting* R. Doc. 1-2 at p. 24).
[18] R. Doc. 1 at ¶ III (*quoting* R. Doc. 1-2 at p. 24).

that they invoked their right to arbitrate all matters in dispute with Ten G by letter dated March 4, 2022.[19]

Defendants filed the instant Motion on February 1, 2023, seeking to compel arbitration and dismiss Ten G's claims or, alternatively, to stay litigation pending arbitration pursuant to the Convention.[20] Defendants assert that the arbitration clause in Ten G's policy is triggered because the parties dispute Ten G's Hurricane Ida-related claim under the policy.[21] Although arbitration agreements in domestic insurance policies usually are not enforceable in Louisiana, Defendants argue that Louisiana law does not negate the arbitration clause in this case because it involves an international commercial relationship subject to the Convention.[22] Defendants contend that arbitration should be compelled under the Convention if the following four requirements are met: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.[23] Defendants claim that there can be no dispute that all four requirements are met in this case because there is a written agreement to arbitrate, it requires arbitration in New York, which is within the territory of the United States, a Convention signatory, the arbitration agreement arises out of a commercial relationship, and at least two of the parties are not United

---

[19] R. Doc. 1 at ¶ III.
[20] R. Doc. 10.
[21] R. Doc. 10-1 at p. 4.
[22] *Id.* (*citing* La. R.S. 22:868).
[23] R. Doc. 10-1 at pp. 4-5 (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)) (internal quotation marks omitted).

States citizens.[24]

Defendants further assert that the insurance policy contains a broad delegation clause that includes Ten G's extra-contractual claims, and that such a broad delegation clause creates a "presumption of arbitrability" and constitutes "clear and unmistakable evidence" that it covers all matters in the agreement.[25] Defendants claim that both this Court and the Fifth Circuit have held that identical or substantially similar policy language requires arbitration of all disputes between the parties.[26] Defendants then assert that while they are entitled to a stay pending arbitration,[27] if the claims involved are arbitrable, a court may dismiss the action instead of staying it.[28] Defendants argue that because all of Ten G's claims are subject to arbitration, "the weight of authority supports dismissal."[29] As such, Defendants assert that the Convention requires arbitration of all of Ten G's claims and that this Court should dismiss the case in favor of arbitration.[30]

Ten G does not dispute that the Convention compels arbitration for its property coverage dispute and contractual claims, but argues that the Motion should be denied

---

[24] R. Doc. 10-1 at p. 5. Elsewhere in the Motion, Defendants assert that, "Certain Underwriters at Lloyd's, London severally subscribing to Certificate No. AMR-63312-03 are foreign insurers domiciled in the United Kingdom with their principal place of business in London, England. HDI Global Specialty SE ("HDI") is a foreign insurer domiciled in Germany with its principal place of business in Hanover, Germany." *Id*. at p. 2.
[25] *Id*. at p. 5 (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985) and quoting *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 538 (5th Cir. 2019)).
[26] R. Doc. 10-1 at pp. 5-6 (citing authority).
[27] *Id*. (*citing* 9 U.S.C. §§ 3, 4).
[28] R. Doc. 10-1 at p. 6 (citing *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 86-87, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).
[29] R. Doc. 10-1 at p. 6 (citing *McDonnel Grp., LLC v. Great Lakes Ins. SE, UK Branch*, 923 F.3d, 427, 431 (5th Cir. 2019)).
[30] R. Doc. 10-1 at p. 7.

because its claims for bad faith penalties under Louisiana law clearly fall outside the scope of the arbitration clause, which states that, "The Arbitration Tribunal may not award exemplary, punitive, multiple, or other damages of a similar nature."[31] Ten G asserts that the language of the arbitration clause "evidences a clear intent to exclude the instant claims from arbitration."[32] Ten G claims that bad faith, punitive claims and damages do not arise from the insurance contract, but from the insurer's violation of statutory duties.[33] Ten G also asserts that Defendants waived their rights to remove bad faith claims based upon the foregoing exclusionary language in the arbitration clause.[34] Relying upon the Fifth Circuit's decision in *Ensco Int'l, Inc. v. Certain Underwriters at Lloyd's*, Ten G argues that while the arbitration clause does not specifically include the word "waiver," the foregoing language "clearly operates as a waiver of the insurers' right to remove bad faith claims by the expressed limitation on the Tribunal's jurisdiction over bad faith type damages."[35] Ten G asserts that Defendants ignore this provision of the arbitration clause in their Motion. Ten G argues that the Motion should be denied because Defendants have clearly and unambiguously waived their right to remove Ten G's bad faith claims to arbitration.[36]

In response, Defendants first assert that Ten G's argument that it has not asserted any breach of contract claims contradicts the allegations in its state court Petition, wherein Ten G alleges that Defendants failed to adequately adjust,

---

[31] R. Doc. 12 at pp. 1-2.
[32] *Id.* at p. 4.
[33] *Id.* at p. 5 (citing *Johno v. Doe*, 2015-0737 (La. App. 4 Cir. 3/9/16), 187 So.3d 581, 585).
[34] R. Doc. 12 at pp. 6-8.
[35] *Id.* at pp. 7-8 (citing *Ensco*, 579 F.3d 442, 444-48 (5th Cir. 2009)).
[36] R. Doc. 12 at pp. 8-9.

investigate, and timely pay its insurance claim and requests money damages, in addition to and separately from, statutory penalties.[37] Defendants further assert that the Fifth Circuit and district courts within it, including this one, have already rejected Ten G's argument that the exclusionary language in the arbitration clause shows an intent to exclude bad faith claims from arbitration, and that courts routinely order all claims to arbitration.[38] Defendants claim that courts have likewise rejected Ten G's argument that a right to removal can be waived based upon the exclusionary language contained in the arbitration clause.[39] Defendants maintain that the Convention requires arbitration of all of Ten G's claims against them that arise from its dispute over its Hurricane Ida insurance claim.[40]

In its Sur-Reply brief, Ten G asserts, for the first time, that Defendants' Motion should be denied as premature because this action is subject to the Court's Hurricane Ida Case Management Order ("CMO") and Streamlined Settlement Program ("SSP").[41] Ten G claims that pursuant to the CMO, both parties had the opportunity to opt out of the SSP within 15 days of entry of the CMO on November 8, 2022.[42] Ten G points out that the CMO specifically states that if the parties do not seek to opt out,

---

[37] R. Doc. 19 at pp. 1-2 (*citing* R. Doc. 1-1 at ¶¶ 13, 17, & 18).
[38] R. Doc. 19 at p. 2 (citing *Woodmen of the World Life Ins. Co. v. Lewis*, 118 Fed.Appx. 826, 831 (5th Cir. 2004); *419 Carondelet, LLC v. Certain Underwriters at Lloyd's, London*, Civ. A. No. 22-4311, 2023 WL 143318 (E.D. La. Jan. 10, 2023) (Vitter, J.); *Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, Civ. A. No. 22-4401, 2023 WL 246832 (E.D. La. Jan. 18, 2023) (Africk, J.); *STMB Properties, LLC v. Certain Underwriters at Lloyd's London*, Civ. A. No. 22-2229, 2022 WL 3924313 (E.D. La. Aug. 31, 2022) (Africk, J.); *Figear, LLC v. Velocity Risk Underwriters Claims,* Civ. A. No. 22-01094, 2022 WL 2812980 (E.D. La. July 18, 2022) (Fallon, J.); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's,* Civ. A. No. 20-102-JWD-SDJ, 2021 WL 359735 (M.D. La. Feb. 2, 2021) (deGravelles, J.)).
[39] R. Doc. 19 at p. 3 (citing *Figear,* Civ. A. No. 22-01094, 2022 WL 2812980 at *5).
[40] R. Doc. 19 at pp. 3-4.
[41] R. Doc. 21 at p. 1.
[42] *Id*. (*citing* R. Doc. 6).

they are electing to participate in the SSP.[43] Ten G then seems to suggest that because neither party opted out, they have elected to participate in the SSP, thereby rendering Defendants' Motion premature.[44]

## II. LEGAL STANDARD

The Convention on the Recognition and Enforcement of Foreign Arbitration Awards (the "Convention") applies when a party seeks to compel arbitration outside the United States or attempts to enforce an arbitration agreement "arising out of a legal relationship, whether contractual or not, which is considered as commercial" and is not "entirely between citizens of the United States."[45] The purpose of the Convention is to "encourage the recognition and enforcement of commercial contracts and to unify the standard by which the agreements to arbitrate are observed, and arbitral awards are enforced in signatory countries."[46] In determining whether the Convention requires compelling arbitration, courts must "conduct only a very limited inquiry."[47] According to the Fifth Circuit, a court should compel arbitration only if the following four prerequisites are met: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.[48] "Federal policy and precedent

---

[43] R. Doc. 21 at pp. 1-2 (*quoting* R. Doc. 6) (internal quotation marks omitted).
[44] R. Doc. 21 at pp. 1-2.
[45] 9 U.S.C. § 202.
[46] *419 Carondelet, LLC v. Certain Underwriters at Lloyd's, London*, Civ. A. No. 22-4311, 2023 WL 143318, at *2 (E.D. La. Jan. 10, 2023) (quoting *Scherk v. Alberto-Culver, Co.*, 417 U.S. 506 n.15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)) (internal quotation marks omitted).
[47] *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citation omitted).
[48] *Freudensprung*, 379 F.3d at 339.

emphasize a strong presumption in favor of the enforcement of arbitration clauses."[49] The Fifth Circuit has held that, "A presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration."[50]

### III. ANALYSIS

### A. Waiver

#### 1. Defendants did not waive their rights to removal.

While not a model of clarity, Ten G seems to argue in its Opposition brief that Defendants waived their rights to arbitrate Ten G's bad faith claims *and* that Defendants waived their rights to remove Ten G's bad faith claims to federal court based upon the exclusionary language contained in the arbitration clause.[51] Regarding removal, Ten G asserts that, "Defendants waived its [sic] removal rights based on the language of the policy," and that, "Defendants waived their rights to remove bad faith claims."[52] Ten G then cites a Fifth Circuit case, *Ensco Intern., Inc. v. Certain Underwriters at Lloyd's*, which set forth three ways by which a party may waive its removal rights under the Convention."[53] Ten G then seems to conflate

---

[49] *Figear, LLC v. Velocity Risk Underwriters Claims*, Civ. A. No. 22-01094, 2022 WL 2812980, at *1 (E.D. La. July 18, 2022) (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)). *See, City of Kenner v. Certain Underwriters at Lloyd's London*, Civ. A. No. 22-2167, 2022 WL 16961130, at *1 (E.D. La. Nov. 16, 2022) (Vance, J.) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 4, 103 S.Ct. 927, 74 L.Ed. 2d 765 (1983); 9 U.S.C. § 2) ("Federal courts apply a heavy presumption in favor of arbitration.").
[50] *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635-36 (5th Cir. 1985) (citing *United Steelworkers of America v. Warrior & Gulf Navigational Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). *See, Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1145 (5th Cir. 1985) (citing authority) ("Thus, as a general rule, whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration.").
[51] R. Doc. 12 at pp. 6-9.
[52] *Id.* at p. 6.
[53] *Id.* (citing *Ensco*, 579 F.3d 442, 444-45 (5th Cir. 2009)).

waiver of the right to arbitrate with waiver of the right to remove when it cites the purported waiver language contained in the arbitration clause and asserts that, "Defendants could not be more explicit in their clear waiver of arbitration of bad faith claims," and that, "This waiver is clear and unambiguous – Plaintiff's bad faith claims and damages arising from same are excluded from arbitration."[54] Ten G again cites *Ensco* for the proposition that the language in the arbitration clause "clearly operates as a waiver of the insurers' right to remove bad faith claims by the expressed limitation on the Tribunal's jurisdiction over bad faith type damages."[55]

To the extent Ten G claims that Defendants have waived their right to remove Ten G's claims to federal court, Ten G cites a Fifth Circuit case, *Freudensprung v. Offshore Technical Services, Inc.*, for the notion that the Convention "requires the district court to order arbitration . . . unless it finds that the said agreement is null and void, inoperable or incapable of being performed."[56] Ten G then seems to discuss removal in the context of "the so called 'null and void' clause,"[57] but never actually alleges that the arbitration clause at issue is null or void.[58] Ten G then correctly asserts that the Fifth Circuit has recognized that there are three ways by which a party may waive its removal rights: (1) by explicitly stating that it is doing so; (2) by allowing the other party the right to choose venue; or (3) by establishing an exclusive

---

[54] R. Doc. 12 at p. 7.
[55] *Id.* at pp. 7-8 (citing *Ensco*, 579 F.3d at 444-45).
[56] R. Doc. 12 at p. 6 (quoting *Freudensprung*, 379 F.3d 327, 339 (5th Cir. 2004)) (internal quotation marks omitted).
[57] R. Doc. 12 at p. 6.
[58] *See, generally*, R. Doc. 12.

venue within the contract.[59] While Ten G recognizes these are the three avenues by which a party may waive its removal rights "under the Convention,"[60] Ten G inexplicably fails to allege or explain which avenue is applicable here. Instead, Ten G merely cites additional Fifth Circuit cases indicating that a waiver of removal rights need not contain explicit words,[61] that a waiver may be implicit to give effect to all contractual provisions,[62] and that, "Courts generally apply the clear statement rule to determine waiver."[63] Ten G, however, does not allege any facts or cite any legal authority to support its position that Defendants waived their rights to removal based upon the exclusionary language in the arbitration clause. The Fifth Circuit has made clear that, "For a contractual clause to prevent a party from exercising its right to removal, the clause must give a clear and unequivocal waiver of that right."[64] The Court finds that Ten G has failed to show that Defendants clearly and unequivocally waived their rights to removal.

### 2. Defendants did not waive their rights to arbitrate Ten G's bad faith claims.

Ten G also asserts in its Opposition brief that Defendants waived their right to arbitrate its bad faith claims through the provision in the arbitration clause that states, "The Arbitration Tribunal may not award exemplary, punitive, multiple, or

---

[59] R. Doc. 12 at p. 6 (citing *Ensco*, 579 F.3d at 443-44 (quoting *City of New Orleans v. Mun. Admin. Servs., Inc.,* 376 F.3d 501, 504 (5th Cir. 2004))).
[60] R. Doc. 12 at p. 6.
[61] R. Doc. 12 at p. 6 (citing *Southland Oil Co. v. Miss. Ins. Guar. Ass'n*, 182 Fed.Appx. 358, 361 (5th Cir. 2006)).
[62] R. Doc. 12 at p. 6 (citing *Ensco*, 579 F.3d at 444).
[63] R. Doc. 12 at p. 6 (citing *Ensco*, 579 F.3d at 447).
[64] *Ensco*, 579 F.3d at 443 (quoting *City of New Orleans*, 376 F.3d at 504) (internal quotation marks omitted).

other damages of a similar nature."[65] At least two other Sections of this Court have rejected these same arguments. In *Figear, LLC v. Velocity Risk Underwriters Claims*, the plaintiff argued that its bad faith claims were excluded from the arbitration clause entered into by the parties, which is nearly identical to the arbitration clause in this case and provided that:

> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below . . . . The Arbitration Tribunal may not award exemplary, punitive, multiple, or other damages of a similar nature.[66]

Addressing the plaintiff's waiver argument, the *Figear* court recognized that, "[i]n light of the federal policy favoring arbitration, there is a strong presumption against finding a waiver of arbitration."[67] The *Figear* court held that, "Waiver must be explicit, clear, and unequivocal," and that the plaintiff had failed to cite any cases "which would indicate that this language can operate as an explicit waiver of the right to arbitrate any claims which might result in exemplary, punitive, multiple, or other damages of a similar nature."[68] The *Figear* court further held that, "At most, this clause limits the damages which an arbitrator might order in the event that Plaintiff was to prevail at arbitration."[69] The *Figear* court concluded that, "Especially in light of the strong presumption that arbitration is not waived, the Court declines to find

---

[65] R. Doc. 12 at p. 7.
[66] *Figear,* Civ. A. No. 22-01094, 2022 WL 2812980, at *2 (E.D. La. July 18, 2022) (citation omitted).
[67] *Id.* (quoting *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421-22 (5th Cir. 2014)) (cleaned up by *Figear*) (internal quotation marks omitted).
[68] *Figear*, Civ. A. No. 22-01094, 2022 WL 2812980 at *2.
[69] *Id.*

here a clear and unequivocal waiver of the right to arbitrate any claim which might result in exemplary, punitive, multiple, or other damages of a similar nature."[70] As such, the court in that case found that the defendants in that case had not waived their right to arbitrate the plaintiff's bad faith claim.

Another Section of this court, adopting the *Figear* court's analysis, reached the same conclusion in *STMB Properties, LLC v. Certain Underwriters at Lloyd's London*.[71] The arbitration clause in *STMB* contained the same exclusionary language as Ten G's policy, namely that, "The Arbitration Tribunal may not award exemplary, punitive, multiple, or other damages of a similar nature."[72] Citing the language quoted above from *Figear*, the *STMB* court concluded that *Figear* court had "identified the crucial distinction—operative in the instant case as well—between the first-order question of whether the Arbitration Tribunal has the authority to decide *if* penalties and fees are warranted pursuant to Louisiana state law, and the second-order question of whether the tribunal has authority to order damages be paid."[73] Although not expressly stated in the opinion, the *STMB* court rejected the plaintiff's waiver argument and compelled arbitration.

The Court reaches the same conclusion in this case. For the reasons set forth by the *Figear* court, and adopted by the *STMB* court, this Court finds that Defendants have not waived their right to arbitrate Ten G's bad faith claims.

**B. Ten G's bad faith claims fall within the scope of the arbitration clause.**

---

[70] *Id.*
[71] Civ. A. No. 22-2229, 2022 WL 3924313, at *2-3 (E.D. La. Aug. 31, 2022).
[72] *Id.* at *1 (internal quotation marks omitted).
[73] *Id.* at *3.

In the Opposition brief, Ten G does not dispute that the Convention compels arbitration for its property coverage dispute and contractual claims, but argues that its bad faith claims remain "clearly outside the scope of the arbitration clause" at issue in this case.[74] Defendants assert in their Motion that the four criteria that must be met for a court to compel arbitration under the Convention are all met in this case.[75] Specifically, Defendants assert that there is a written agreement to arbitrate contained in the insurance policy at issue, that the arbitration clause provides for arbitration in a signatory nation, namely the United States (New York), that the arbitration clause arises out of a commercial legal relationship (an insurance contract between the parties), and that at least one of the parties to the arbitration agreement is not a citizen of the United States.[76] Ten G does not dispute these assertions.

Instead, Ten G argues that its bad faith claims do not implicate the arbitration clause, "Because bad faith, punitive claims and damages do **not** arise from the contract of insurance, but rather from the insurers' violation of statutory duties."[77] The *Figear* court rejected this same argument, explaining that, "It is true that there are Louisiana state court cases holding as such. But these cases do not arise in the context of arbitration."[78] The *Figear* court acknowledged the Fifth Circuit's

---

[74] R. Doc. 12 at p. 1.
[75] *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)) (internal quotation marks omitted).
[76] R. Doc. 10-1 at pp. 2 & 5. *See, supra*, note 24.
[77] R. Doc. 12 at p. 5 (citing *Johno v. Doe*, 2015-0737 (La. App. 4 Cir. 3/9/16), 187 So.3d 581, 585) (emphasis in original).
[78] *Figear, LLC v. Velocity Risk Underwriters Claims*, Civ. A. No. 22-01094, 2022 WL 2812980, at *2 (E.D. La. July 18, 2022) (citing *Johno*, 2015-0737, 187 So.3d at 585 (holding that release of all contractual rights against insurer did not include statutory bad faith claim)).

instruction that, "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration."[79]  The court in *Figear* then noted the strong presumption that arbitration agreements are valid and binding and pointed out that at least one other court in this Circuit had "specifically rejected the argument Plaintiffs present here [that bad faith claims fall outside the scope of the arbitration clause because they are statutory and not based on the policy], with reference to an essentially identically worded arbitration clause."[80]

In that other case, *Georgetown Home Owners Association, Inc. v. Certain Underwriters at Lloyd's, London*, the Middle District of Louisiana held that, "The Arbitration Agreement at issue is broad in scope because it states that 'all matters in difference' that relate to the insurance policy are subject to arbitration," and that, "By drafting a broad delegation clause, the parties have clearly and unmistakably evidenced their intent to arbitrate all their claims, disputes and other matters pertaining to the contractual agreement."[81]  The *Georgetown* court further held that, "Contrary to Plaintiff's argument that its bad-faith claims fall outside the scope of the arbitration agreement because they are 'statutory' and 'not based on the Policy,' the substance of these claims relates to the insurance agreement.  Without the Policy

---

[79] *Figear*, Civ. A. No. 22-01094, 2022 WL 2812980 at *2 (quoting *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)) (internal quotation marks omitted).
[80] *Figear*, Civ. A. No. 22-01094, 2022 WL 2812980 at *2 (citing *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, Civ. A. No. 20-102-JWD-SDJ, 2021 WL 359735, at *15 (M.D. La. Feb. 2, 2021) (deGravelles, J.)).
[81] *Georgetown*, Civ. A. No. 20-102-JWD-SDJ, 2021 WL 359735 at *15 (citing *Halliburton Energy Services, Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 538 (5th Cir. 2019)).

of insurance between the parties, no disputes or differences would exist."[82]  As such, the *Georgetown* court concluded that, "the Arbitration Agreement conceivably covers these claims."[83]  The court in *Figear* agreed with that holding and concluded that the parties had to arbitrate the plaintiff's bad faith claims.[84]  The *STMB* court, relying on both *Figear* and *Georgetown*, reached the same conclusion and left "issues relative to the determination of whether penalties and fees are warranted pursuant to Louisiana law to the Arbitration Tribunal."[85]  Other Sections of this court have likewise compelled arbitration of bad faith claims.[86]

Notably, Ten G does not address any of these cases in its Opposition brief or its Sur-Reply brief, despite the fact that some were cited by the Defendants in their Motion[87] and/or Reply brief.[88]  This Court agrees with the courts in *Georgetown*, *Figear*, and *STMB* and finds that Ten G's bad faith claims fall within the scope of the arbitration clause at issue.  As stated by the court in *Georgetown*, the substance of Ten G's bad faith claims arise from alleged failures of the insurers to adequately adjust, investigate and pay the claims.  Accordingly, the Court will stay the pending

---

[82] *Georgetown*, Civ. A. No. 20-102-JWD-SDJ, 2021 WL 359735 at *15 (internal citation to the record omitted).
[83] *Id.*
[84] *Figear*, Civ. A. No. 22-01094, 2022 WL 2812980 at *3.
[85] *STMB Properties, LLC*, Civ. A. No. 22-2229, 2022 WL 3924313, at *3 (E.D. La. Aug. 31, 2022).
[86] *See, Olsen Securities Corp. v. Certain Underwriters at Lloyd's London*, Civ. A. No. 22-3120, 2023 WL 405437, at *6 (E.D. La. Jan. 25, 2023) (Brown, C.J.) (citing authority) (finding that plaintiff's bad faith and breach of duty of good faith and fair dealing claims derive from the insurance policy and are subject to the arbitration clause); *City of Kenner v. Certain Underwriters at Lloyd's London*, Civ. A. No. 22-2167, 2022 WL 16961130, at *3 (E.D. La. Nov. 16, 2022) (ordering the parties to arbitrate plaintiff's claim that defendants breached their duties of good faith and fair dealing).
[87] *See*, R. Doc. 10-1 at pp. 5-6.
[88] R. Doc. 19 at p. 2.

litigation while the Arbitration Tribunal determines whether penalties and fees are warranted under Louisiana law.[89]

### C. The Motion is not premature based upon the CMO.

In its Sur-Reply brief, Ten G argues that in addition to lacking merit, Defendants' Motion should be denied as premature because the parties did not timely opt out of the Court's Hurricane Ida Streamlined Settlement Program ("SSP"), as described in the Case Management Order ("CMO") pertaining to Hurricane Ida claims and, as such, the parties are subject to the SSP.[90] The CMO was filed into the record in this case on November 8, 2022, and it provides that, "Within 15 days of the filing of the defendant's responsive pleading (or if later then within 15 days of either an Order denying a motion for remand or of entry of this Order) either party may petition the presiding Magistrate Judge to opt out of the SSP (Section 3 of this Order)."[91] The CMO further provides that, "If the parties do not seek to opt out, they are electing to participate in the two-staged Streamlined Settlement Program . . . ."[92]

This Court has previously held that even when parties fail to timely opt-out of the SSP, there are instances when "mandating the parties to abide by the SSP would hinder rather than promote the swift and just resolution of this matter."[93] As such, the Court concluded that, "the clear language of the arbitration clause as well as

---

[89] In their Motion, Defendants request that the Court either compel arbitration and dismiss Ten G's claims against them or, alternatively, stay the litigation pending arbitration. R. Doc. 10 at p. 1; R. Doc. 10-1 at pp. 1 & 6-7. Since the Court will grant Defendants' request to compel arbitration and stay the case, the Court declines to dismiss Ten G's claims at this time.
[90] R. Doc. 21 (*citing* R. Doc. 6).
[91] R. Doc. 6 at p. 5.
[92] *Id.*
[93] *419 Carondelet, LLC v. Certain Underwriters at Lloyd's, London*, Civ. A. No. 22-4311, 2023 WL 143318, at *2 (E.D. La. Jan. 10, 2023).

binding precedent require this Court to grant Defendants' Motion to Compel Arbitration."[94] In doing so, the Court explained that, "Although Louisiana law ordinarily prohibits enforcement of arbitration clauses concerning insurance disputes, the Fifth Circuit has held that [the Convention] supersedes state law."[95] At least one other Section of this Court has reached the same conclusion.[96] Accordingly, the Court rejects Ten G's assertion that the parties' failure to opt-out of the SSP renders the instant Motion, and Defendants' request to compel arbitration, premature.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration and Dismiss Claims or Alternatively Stay Litigation Pending Arbitration[97] is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent that Defendants move to compel arbitration, but **DENIED** to the extent that Defendants seek dismissal of Ten G's claims.

**IT IS FURTHER ORDERED** that this matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending a final decision by the Arbitration Tribunal.

**IT IS FURTHER ORDERED** that if any issues remain after a final judgment is issued by the Arbitration Tribunal, the above-captioned matter may, following a

---

[94] *Id.*
[95] *Id.* (citing *McDonnel Grp., LLC v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431-32 (5th Cir. 2019), *as revised* (June 6, 2019)).
[96] *3501 N. Causeway Assocs., LLC v. Certain Underwriters at Lloyd's, London*, Civ. A. No. 22-3787, 2023 WL 1765920, at *3 (E.D. La. Feb. 3, 2023) (Barbier, J.).
[97] R. Doc. 10.

written motion by a party filed within thirty (30) days of a final judgment of the Arbitration Tribunal, be reopened if authorized by this Court.

New Orleans, Louisiana, July 25, 2023.

_____
**WENDY B. VITTER**
**United States District Judge**